## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS and LAWYERS FOR CIVIL RIGHTS, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. _____ ) |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) ) ) ) ) |
| Defendants. | ) ) ) |

## COMPLAINT

## INTRODUCTION

1.      This is an action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for the production of public records related to the cooperation between Massachusetts officials and the federal immigration authorities.

2.      In June 2019, the American Civil Liberties Union of Massachusetts ("ACLUM") submitted a FOIA request (the "Gang Profiling Request") to the United States Department of Homeland Security ("DHS") and United States Immigrations and Customs Enforcement ("ICE") (collectively, the "Defendants"). The Gang Profiling Request sought records relating to the profiling of certain individuals as alleged gang members and the collaboration of Massachusetts state and local law enforcement with DHS in performing such profiling.

3.      In October 2019, ACLUM and Lawyers for Civil Rights ("LCR") (collectively, the "Plaintiffs") submitted a FOIA request (the "WSO Request") to Defendants. The WSO Request

sought policies, communications, and other records relating to ICE's Warrant Service Officer ("WSO") program.[1]

4.     To date, neither of the Defendants has released any record responsive to the Gang Profiling Request or the WSO Request (collectively, the "Requests").

5.     Production of records responsive to the Gang Profiling Request is important to helping the public understand how DHS receives and uses information from local and state police, particularly with respect to potentially unreliable or mistaken allegations of gang membership that often carry catastrophic consequences for a young person's life. The President has made immigration issues a focus of his administration, has repeatedly promised to target noncitizens with alleged gang ties,[2] and has described alleged gang members as "animals."[3] Local law enforcement officials, however, often allege gang membership without any evidence of violence or criminal activity. Rather, they base their allegations on benign, unavoidable, and constitutionally protected behavior, including mere association with neighbors and classmates.[4] The resulting gang databases often incorporate significant racial disparities; in Boston, for example, white people comprise about half the population but only 2% of the gang database

---

[1] U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *ICE launches program to strengthen immigration enforcement* (May 6, 2019), ice.gov/news/releases/ice-launches-program-strengthen-immigration-enforcement.

[2] *See, e.g.*, Donald Trump (@realDonaldTrump), Twitter (Feb. 25, 2019, 3:32 AM), twitter.com/realdonaldtrump/status/1099995611305254912 ("Drugs, Gangs and Human Trafficking must be stopped!"); Donald Trump (@realDonaldTrump), Twitter (July 3, 2018, 3:49 AM) twitter.com/realdonaldtrump/status/1014098721460686849 (promising to send ICE to get gangs out of the country); Donald Trump (@realDonaldTrump), Twitter (April 18, 2017, 2:39 AM) twitter.com/ realdonaldtrump/status/854268119774367745 ("We are removing [gangs] fast!").

[3] Julie Hirschfeld Davis and Niraj Chokshi, *Trump Defends 'Animals' Remark, Saying It Referred to MS-13 Gang Members*, N.Y. TIMES (May 17, 2018), https://www.nytimes.com/2018/05/17/us/trump-animals-ms-13-gangs.html.

[4] *See, e.g.*, *Commonwealth v. Wardsorth*, 482 Mass. 454, 466-71 (2019).

entries.[5] The public is entitled to know how gang allegations by school officials and police officers are obtained and used by DHS, and how gang and other information about noncitizens is maintained and shared with DHS by local officials.[6]

6. Similarly, production of records responsive to the WSO Request is critical to understanding the degree and details of any cooperation between ICE and Massachusetts state and local law enforcement to subvert state law. In 2017, the Massachusetts Supreme Judicial Court held in *Lunn v. Commonwealth* that "Massachusetts law provides no authority for Massachusetts court officers to arrest and hold an individual solely on the basis of a Federal civil immigration detainer, beyond the time that the individual would otherwise be entitled to be released from State custody."[7] The WSO program, by its own terms, is ICE's attempt to evade such restrictions.[8]

---

[5] Philip Marcelo, *Gang database made up mostly of young black, Latino men*, Associated Press (July 30, 2019), https://apnews.com/dd5643e358c3456dbe14c16ade03711d.

[6] Shannon Dooling, *City Officials File Stronger 'Trust Act' After Concerns Over Boston Police Cooperation With ICE*, WBUR (June 13, 2019), wbur.org/news/2019/06/13/boston-revised-trust-act; Shannon Dooling, *Boston Police Confirm Officer's Involvement In ICE Arrest. ACLU Wants More Info*, WBUR (March 7, 2019), wbur.org/news/2019/03/07/boston-police-ice-task-force; Hannah Dreier, *How a crackdown on MS-13 caught up innocent high school students*, N.Y. TIMES MAGAZINE (Dec. 27, 2018), nytimes.com/2018/12/27/magazine/ms13-deportation-ice.html; Phillip Martin, *On Nantucket, Alleged Gang Member Moves On, But Is Not Free*, WGBH (Dec. 18, 2018), wgbh.org/news/local-news/2018/12/18/alleged-gang-member-on-nantucket-moves-on-but-is-not-free; Shannon Dooling, *What A Boston Student's Deportation Reveals About School Police And Gang Intelligence*, WBUR (Dec. 13, 2018), wbur.org/news/2018/12/13/east-boston-student-discipline-to-deportation; Phillip Martin, *Civil Rights Groups Say Police In Schools Are Source Of False Gang Alerts. Not So Says Boston Police*, WGBH NEWS (June 17, 2018), wgbh.org/news/news/2018/06/17/civil-rights-groups-say-police-in-schools-are-source-of-false-gang-alerts-not-so-says-boston-police; Shannon Dooling, *A Minor Fight In A Boston School Landed One Student In ICE Custody, Advocates Fear*, WBUR (Jan. 26, 2018), wbur.org/news/2018/01/26/boston-student-ice-custody.

[7] 477 Mass. 517, 537 (2017).

[8] U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *ICE launches program to strengthen immigration enforcement* (May 6, 2019), ice.gov/news/releases/ice-launches-program-strengthen-immigration-enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *Delegation of Immigration Authority Section 287(g) Immigration and Nationality Act* (Oct. 4, 2019), https://www.ice.gov/287g#signedMOA.

According to ICE, by the end of September 2019, approximately 40 jurisdictions nationwide had "expressed interest" in the WSO program, with 42 subsequently signing memoranda of understanding with ICE during October 2019.[9] ICE further reports that it is "currently pursuing additional [WSO] agreements nationwide."[10] The public is entitled to know whether any Massachusetts entities have joined, or contemplate joining, this program.

7.     Through the Requests, Plaintiffs seek to understand and inform the public about, among other things, what types of cooperation exist between local law enforcement and Defendants with respect to non-citizens, and what, if any, safeguards are currently in place to prevent abuse and protect core constitutional rights.

8.     The Plaintiffs now ask the Court to issue an injunction requiring the Defendants to process the Requests immediately and to produce the requested records. The Plaintiffs also seek an order enjoining Defendants from assessing fees for the processing of the Requests.

PARTIES

9.     The American Civil Liberties Union of Massachusetts is a Massachusetts non-profit corporation with its principal place of business in Boston, Massachusetts. ACLUM's mission is to protect, and to educate the public about, civil rights and civil liberties. ACLUM is committed to principles of transparency and accountability in government. Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of ACLUM's work and one of its primary activities.

---

[9] U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *Fiscal Year 2019 Enforcement and Removal Operations Report* at 18 (Dec. 2019), https://www.ice.gov/sites/default/files/documents/Document/2019/eroReportFY2019.pdf.

[10] *Id.*

10.   Lawyers for Civil Rights is a Massachusetts non-profit corporation with its principal place of business in Boston, Massachusetts. LCR fosters equal opportunity and fights discrimination on behalf of people of color and immigrants. Part of LCR's core mission is public education on areas of interest to the groups LCR represents. As a result, gathering and disseminating information—particularly from public officials or agencies—is an integral part of LCR's purpose and function. Materials LCR disseminates are available for free, to everyone, including other not-for-profit groups and organizations, faith communities, students, and faculty. LCR also disseminates information through its website.[11]

11.   The United States Department of Homeland Security ("DHS") is a department of the government of the United States of America (the "U.S." or "United States").

12.   United States Immigration and Customs Enforcement ("ICE") is an organization within DHS.

## JURISDICTION AND VENUE

13.   This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

14.   Venue lies in the District of Massachusetts pursuant to 5 U.S.C. § 552(a)(4)(B), including because it is the district in which ACLUM and LCR have their principal places of business.

## FACTS

### A. Gang Profiling Request

15.   On June 20, 2019, ACLUM submitted the Gang Profiling Request to DHS and ICE. A true and accurate copy of the Request is attached as Exhibit A.

16.   The Gang Profiling Request sought:

---

[11] www.lawyersforcivilrights.org.

a. All Homeland Security Investigations (HSI) memoranda, documentation, and/or reports relating to an individual's verified or suspected gang affiliation, whether addressed to an "Alien File" or sent to any other agency or sub-agency, including the Immigration and Customs Enforcement's (ICE) Office of Chief Counsel (OCC), ICE Enforcement and Removal Operations (ERO), the Boston Immigration Court, U.S. Citizenship and Immigration Services, Department of Homeland Security (DHS) Office of Intelligence and Analysis, and the U.S. Attorney's Office that were created or submitted by HSI in Massachusetts between September 1, 2015 and the date of the search;

b. All correspondence between HSI Special Agent Sean Connolly and DHS Office of Intelligence and Analysis, ICE's National Gang Unit, ICE OCC and/or ICE ERO between May 1, 2017 and October 31, 2017, and between January 1, 2019 and the date of the search;

c. All correspondence between HSI Special Agent Sean Connolly and the Boston Police Department (BPD), Boston Regional Intelligence Center (BRIC), Chelsea Police Department, Everett Police Department, Nantucket Police Department, New Bedford Police Department, Pittsfield Police Department, Revere Police Department, the Massachusetts State Police, and/or any school district employees in Massachusetts between September 1, 2015 and the date of the search;

d. All documents mentioning East Boston High School (EBHS), Chief Eric Weston, Lt. Kenneth Badgett, Lt. James Giardina, Sgt. Gabriel Rosa and/or Officer Roy Ercolano, including communications with each of these individuals, between January 1, 2015 and the date of the search;

e. All documents mentioning the BPD-ICE Task Force or Boston Police Sergeant Detective Gregory Gallagher, between January 1, 2015 and the date of the search;

f. All communications with Boston Police Sergeant Detective Gregory Gallagher or another member of the BPD-ICE task force between May 1, 2017 and October 31, 2017, and between January 1, 2019 and the date of the search;

g. All documents related to Operation Matador or any other enforcement operations targeting gang members or associates in Massachusetts;

h. All documents reflecting DHS Office of Intelligence and Analysis' access to the BRIC's gang database and other databases containing information about the suspected gang affiliation of Massachusetts individuals;

i. All memoranda of understanding or other agreements pertaining to the sharing of intelligence or information with state and local law enforcement in Massachusetts, including but not limited to agreements with the Commonwealth Fusion Center, the Massachusetts State Police, BRIC, and the Boston Police Department;

      j.    Policy directives, internal memos, or other guidance, whether formal or informal, related to the practices and procedures for screening individuals for possible gang involvement, including but not limited to (a) unaccompanied minors; (b) nationals of Mexico, El Salvador, Honduras, and/or Guatemala; (c) any other category of individual with cases pending before U.S. Citizenship and Immigration Services or the Executive Office of Immigration Review;

      k.    Any record documenting the number of DHS employees assigned to work at the Commonwealth Fusion Center, the name of the component agency that employs each employee (e.g. HSI, ERO, etc.), the employee's job title, and/or the employee's level or type of permission to access databases containing information about alleged gang association;

      l.    Any record documenting the number of DHS employees assigned to work at the BRIC, the name of the component agency that employs each employee (e.g. HSI, ERO, etc.), the employee's job title, and/or the employee's level of permission to access the Gang Assessment Database and any other databases containing information about alleged gang association;

      m.    Any record of the databases maintained by Massachusetts state or local entities that are searchable or accessible by representatives of the Department of Homeland Security; and

      n.    Any document describing HSI or other DHS procedures pertaining to the verification of information originating from state and local law enforcement, including field interaction/observation/encounter (FOIE) or similar reports and gang designation determinations.

17.   On June 21, 2019, DHS responded to ACLUM, transferring the request to ICE and to the Office of Intelligence and Analysis. A true and accurate copy of the response is attached as Exhibit B.

18.   On July 1, 2019, ICE responded to ACLUM: "After careful review of your FOIA request, we determined that your request is **too broad in scope**, did not specifically identify the records which you are seeking, or only posed questions to the agency." ICE further stated it would administratively close the request in 30 days unless ACLUM resubmitted it. A true and accurate copy of ICE's response is attached as Exhibit C.

19.   On July 1, 2019, ACLUM appealed ICE's determination. A true and accurate copy of that appeal is attached as Exhibit D.

20.   On August 9, 2019, ACLUM received a notice from the ICE Office of the Principal Legal Advisor informing ACLUM that "ICE ha[d] determined that new search(es) or, modifications to the existing search(es), could be made in regard to" request (j) as listed above. ICE explained that it was "therefore remanding [the] appeal to the ICE FOIA Office for processing and re-tasking to the appropriate agency/office(s) [] to obtain any responsive documents" and that the "ICE FOIA Office [would] respond directly" to ACLUM. ICE further explained that it "affirm[ed] the finding of the ICE FOIA Office that the remaining categories of requested information [were] too broad." A true and accurate copy of ICE's response to ACLUM's appeal is attached as Exhibit E.

21.   ACLUM has not received any further correspondence or documents concerning or responsive to the Request from Defendants.

## B.  WSO Request

22.   On October 16, 2019, Plaintiffs submitted the WSO Request to ICE. A true and accurate copy of the WSO Request is attached as Exhibit F.

23.   The WSO Request sought:

    a.  ICE's policies, procedures, instructions, and other guidance for the WSO program;

    b.  All Memoranda of Agreement and other contracts executed by ICE in connection with the WSO program, including with any state or local government entity;

    c.  All communications and correspondence, including without limitation electronic mail, between ICE and any state or local governmental entity located in Massachusetts concerning the WSO program;

    d.  All records concerning the implementation of the WSO program in Massachusetts, including without limitation: (a) records concerning the number of people detained or arrested in Massachusetts in connection with the program; and (b) records

documenting any payments made to any state or local government entity in Massachusetts in connection with the program; and

e.  Any record containing an analysis of the legal basis for and/or legality of the WSO program, including without limitation: (a) any analysis of the authorization for the program under any federal statute or appropriation; and (b) any analysis of the legality of any state or local government entity's participation in the program under state, federal, or local law.

24.  On November 6, 2019, the ICE FOIA Office emailed ACLUM stating that ICE had determined that the WSO Request was "**too broad in scope**, did not specifically identify the records which [Plaintiffs] [were] seeking, or only posed questions to the agency." ICE advised that "[w]henever possible, a request should include specific information about each record sought, such as the date, title or name, author, recipients, and subject matter of the records, if known, or the ICE program office you believe created and/or controls the record." A true and accurate copy of the email is attached as Exhibit G.

25.  On November 7, 2019, Plaintiffs responded to ICE explaining that they would not resubmit the Request because they had complied with their statutory obligations to "describe the records sought in sufficient detail to enable DHS personnel to locate them with a reasonable amount of effort."[12] Plaintiffs also explained, among other things, that they had made a search of ICE's website for the additional information requested by the November 6, 2019 email, but that the only publicly available information was the list of WSO-type contracts contained on ICE's public roster of Section 287(g) agreements and that the rest of the information sought in the WSO Request was non-public and solely in ICE's control. A true and accurate copy of Plaintiffs' response is attached as Exhibit H.

26.  On December 5, 2019, the ICE FOIA Office wrote to Plaintiffs to invoke a 10-day extension for its response. The ICE FOIA Office also issued a de facto rejection of Plaintiffs'

[12] 6 C.F.R. § 5.3(b).

request for a fee waiver, stating: "We shall charge you for records in accordance with the DHS Interim FOIA regulations as they apply to commercial requesters." A true and accurate copy of that response is attached as Exhibit I.

27.  Plaintiffs have not received any further correspondence or documents concerning or responsive to the WSO Request from Defendants.

CLAIM FOR RELIEF

Count I: Violation of FOIA 5 U.S.C. § 552

28.  The foregoing allegations are re-alleged and incorporated herein.

29.  Defendants have failed to make reasonable efforts to search for records sought by the Requests.

30.  Defendants have failed to produce records responsive to the Requests.

31.  Plaintiffs are entitled to a waiver of all search, review, processing, and duplication fees in connection with the Requests.

PRAYER FOR RELIEF

Wherefore, Plaintiffs ask this Court to GRANT the following relief:

1.  Order that Defendants shall produce the requested records forthwith, or alternatively on an expedited schedule established by the Court;

2.  Enjoin Defendants from charging Plaintiffs search, review, processing, and duplication fees in connection with responding to the Request;

3.  Award Plaintiffs costs and reasonable attorney fees in the action; and

4.  Grant such other relief as the Court may deem just and proper.

Date: December 23, 2019                    Respectfully Submitted,

                                           */s/ Lauren Godles Milgroom*_____
                                           Joel Fleming (BBO# 685285)
                                           Lauren Godles Milgroom (BBO# 698743)
                                           Block & Leviton LLP
                                           260 Franklin St., Suite 1860
                                           Boston, MA 02110
                                           (617) 398-5600
                                           joel@blockesq.com
                                           lauren@blockesq.com

                                           Matthew R. Segal (BBO #654489)
                                           Daniel L. McFadden (BBO #676612)
                                           American Civil Liberties Union
                                           Foundation of Massachusetts, Inc.
                                           211 Congress Street
                                           Boston, MA 02110
                                           (617) 482-3170
                                           msegal@aclum.org
                                           dmcfadden@aclum.org

                                           Oren Nimni (BBO #691821)
                                           Lawyers for Civil Rights
                                           61 Batterymarch St.
                                           Boston, MA 02110
                                           (617) 988-0606
                                           onimni@lawyersforcivilrights.org