

Adriana Lafaille
Staff Attorney
(617) 482-3170 x308
alafaille@aclum.org

June 20, 2019

Chief Privacy Officer/Chief FOIA Officer
U.S. Department of Homeland Security
245 Murray Drive SW
STOP-0655
Washington, D.C. 20528-0655
foia@hq.dhs.gov

FOIA Officer
Freedom of Information Act Office
Immigration and Customs Enforcement
500 12th Street, SW, Stop 5009
Washington, D.C. 20536-5009
ice-foia@dhs.gov

Re:   FOIA request re DHS handling of allegations of gang membership

Dear FOIA officer:

This letter constitutes a request pursuant to the Freedom of Information Act, 5 U.S.C. § 552, on behalf of the American Civil Liberties Union of Massachusetts (ACLUM).

## I.   <u>Documents Requested</u>

For each of the following requests, ACLUM asks that responsive electronic records be provided electronically in their native file format, if possible. Alternatively, ACLUM asks that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and in separate, Bates-stamped files. See 5 U.S.C. § 552(a)(3)(B).

ACLUM requests:

1.   All Homeland Security Investigations (HSI) memoranda, documentation, and/or reports relating to an individual's verified or suspected gang affiliation, whether addressed to an "Alien File" or sent to any other agency or sub-agency, including the Immigration and Customs Enforcement's (ICE) Office of Chief Counsel (OCC), ICE Enforcement and Removal Operations (ERO), the Boston Immigration Court, U.S.

    Citizenship and Immigration Services, Department of Homeland Security (DHS) Office of Intelligence and Analysis, and the U.S. Attorney's Office. Please do not redact the zip code, country of origin, year of birth, or basis for gang affiliation. This request is limited to memoranda, documentation or reports created or submitted by HSI in Massachusetts between September 1, 2015 and the date of the search.

2. All correspondence between HSI Special Agent Sean Connolly and DHS Office of Intelligence and Analysis, ICE's National Gang Unit, ICE OCC and/or ICE ERO. This request is limited to correspondence between May 1, 2017 and October 31, 2017, and between January 1, 2019 and the date of the search.

3. All correspondence between HSI Special Agent Sean Connolly and the Boston Police Department (BPD), Boston Regional Intelligence Center (BRIC), Chelsea Police Department, Everett Police Department, Nantucket Police Department, New Bedford Police Department, Pittsfield Police Department, Revere Police Department, the Massachusetts State Police, and/or any school district employees in Massachusetts between September 1, 2015 and the date of the search.

4. All documents mentioning East Boston High School (EBHS), Chief Eric Weston, Lt. Kenneth Badgett, Lt. James Giardina, Sgt. Gabriel Rosa and/or Officer Roy Ercolano, including communications with each of these individuals, between January 1, 2015 and the date of the search.

5. All documents mentioning the BPD-ICE Task Force or Boston Police Sergeant Detective Gregory Gallagher, between January 1, 2015 and the date of the search.

6. All communications with Boston Police Sergeant Detective Gregory Gallagher or another member of the BPD-ICE task force between May 1, 2017 and October 31, 2017, and between January 1, 2019 and the date of the search.

7. All documents related to Operation Matador or any other enforcement operations targeting gang members or associates in Massachusetts.

8. All documents reflecting DHS Office of Intelligence and Analysis' access to the BRIC's gang database and other databases containing information about the suspected gang affiliation of Massachusetts individuals.

9. All memoranda of understanding or other agreements pertaining to the sharing of intelligence or information with state and local law enforcement in Massachusetts, including but not limited to agreements

   with the Commonwealth Fusion Center, the Massachusetts State Police, BRIC, and the Boston Police Department.

10. Policy directives, internal memos, or other guidance, whether formal or informal, related to the practices and procedures for screening individuals for possible gang involvement, including but not limited to (a) unaccompanied minors; (b) nationals of Mexico, El Salvador, Honduras, and/or Guatemala; (c) any other category of individual with cases pending before U.S. Citizenship and Immigration Services or the Executive Office of Immigration Review.

11. Any record documenting the number of DHS employees assigned to work at the Commonwealth Fusion Center, the name of the component agency that employs each employee (e.g. HSI, ERO, etc.), the employee's job title, and/or the employee's level or type of permission to access databases containing information about alleged gang association.

12. Any record documenting the number of DHS employees assigned to work at the BRIC, the name of the component agency that employs each employee (e.g. HSI, ERO, etc.), the employee's job title, and/or the employee's level of permission to access the Gang Assessment Database and any other databases containing information about alleged gang association.

13. Any record of the databases maintained by Massachusetts state or local entities that are searchable or accessible by representatives of the Department of Homeland Security.

14. Any document describing HSI or other DHS procedures pertaining to the verification of information originating from state and local law enforcement, including field interaction/observation/encounter (FOIE) or similar reports and gang designation determinations.

## II. ACLUM is entitled to expedited processing

ACLUM requests expedited processing under 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(d). Expedited processing is warranted because there is a particular "urgency to inform the public" concerning how DHS obtains, evaluates, disseminates and uses allegations about an individual's gang membership, 5 U.S.C. § 552(a)(6)(E), and ACLUM's "main professional activity or occupation is information dissemination," 6 C.F.R. § 5.5(d)(3).

First, there is "compelling need" for expedited processing based upon the "urgency to inform the public concerning . . . Federal Government activity." 5 U.S.C. § 552(a)(6)(E); see 6 C.F.R. § 5.5(d)(1)(ii). The President of the United States has

claimed to have taken thousands of gang members off the streets.[1] And ICE purports to be "focused on removing public safety threats, such as convicted criminal aliens and gang members . . . ."[2] Yet numerous reports have highlighted the inaccuracies of the gang databases DHS relies on[3] and the human consequences of these enforcement practices.[4] ACLUM has a compelling need to inform the public about these issues.

Second, ACLUM is an organization whose "main professional activity or occupation is information dissemination." 6 C.F.R. § 5.5(d)(3). Through its Data for Justice Project, ACLUM publishes data, reports, and public records that it obtained through requests to government agencies.[5] ACLUM's regular means of disseminating information also include: a website with approximately 150,000 visitors every year;[6] reports,[7] know-your-rights materials,[8] news releases,[9] and

---

[1] Salvador Rizzo, *President Trump's claim that 'thousands and thousands' of MS-13 members are off the streets*, Washington Post (February 8, 2018), washingtonpost.com/news/fact-checker/wp/2018/02/08/president-trumps-claim-that-thousands-and-thousands-of-ms-13-members-are-off-the-streets/.
[2] News Release: *ICE arrests 32 during 5-day enforcement action in New England* (June 6, 2019), ice.gov/news/releases/ice-arrests-32-during-5-day-enforcement-action-new-england.
[3] See, *e.g.*, Mick Dumke, *Chicago's Gang Database Is Full of Errors — And Records We Have Prove It*, ProPublica Illinois (Apr. 19, 2018), propublica.org/article/politic-il-insider-chicago-gang-database.
[4] See, *e.g.*, Phillip Martin, *On Nantucket, Alleged Gang Member Moves On, But Is Not Free*, WGBH (Dec. 18, 2018), wgbh.org/news/local-news/2018/12/18/alleged-gang-member-on-nantucket-moves-on-but-is-not-free.
[5] See data.aclum.org. To avoid burdening the agency with an unnecessarily large submission, this request does not include exhibits relevant to the ACLU of Massachusetts' public information activities. If such documentation would be helpful to your review of this request, please let me know.
[6] See aclum.org.
[7] See ACLU of Massachusetts Briefing Paper, *Facts Over Fear: The benefits of declining to prosecute misdemeanor and low level offenses* (March 2019), aclum.org/sites/default/files/20180319_dtp-final.pdf; Kade Crockford, *Beyond Sanctuary: Local Strategies for Defending Civil Liberties*, THE CENTURY FOUNDATION (Mar. 2018), tcf.org/content/report/beyond-sanctuary/; Nasser Eledroos and Kade Crockford, *Social Media Monitoring in Boston: Free Speech in the Crosshairs* (Feb. 2018), privacysos.org/social-media-monitoring-boston-free-speech-crosshairs/; *No Tape, No Testimony: How Courts Can Ensure the Responsible Use of Body Cameras* (Nov. 2016), aclum.org/sites/default/files/wp-content/uploads/2016/11/ACLU_BodyCameras_11.21_final.pdf; *The War on Marijuana in Black and White: A Massachusetts Update* (Oct. 2016), aclum.org/sites/default/files/tr-report-10-2016-final-with-cover.pdf; *Back to the Drawing Board: Student Privacy in Massachusetts K-12 Schools* (Oct. 2015), aclum.org/sites/default/files/wp-content/uploads/2015/10/back_to_the_drawing_board_report_large_file_size.pdf; *Black, Brown and Targeted: A Report on Boston Police Department Street Encounters from 2007-2010* (Oct. 2014), aclum.org/sites/default/files/wp-content/uploads/2015/06/reports-black-brown-and-targeted.pdf; *Our Homes are Not Battlefields: Reversing the Militarization & Federalization of Local Police in Massachusetts* (June 2014), aclum.org/sites/default/files/wp-content/uploads/2015/06/reports-our-homes-are-not-battlefields.pdf; see also aclum.org/reports.
[8] See aclum.org/en/know-your-rights (providing know-your-rights materials for many scenarios, including airports, phone use in schools, FBI questioning, and police-pedestrian encounters).
[9] See aclum.org/en/know-your-rights.

other publications;[10] an email newsletter to more than 100,000 subscribers;[11] two blogs that attract thousands of readers monthly;[12] a facebook account with more than 25,000 followers,[13] a twitter account with more than 24,000 followers,[14] and other social media accounts;[15] a podcast series;[16] and educational events and regular public speaking engagements.

In addition, ACLUM is an affiliate of the national ACLU, which regularly disseminates content created by the ACLU and its affiliates through email updates to more than one million subscribers, a print magazine distributed to over 350,000 ACLU members, a blog attracting more than 40,000 unique visitors per month, its website, social media accounts, and other publications.[17]

## II. Requester is entitled to a fee waiver

ACLUM is entitled to a fee waiver under the FOIA statute and Department of Justice Regulations for two reasons. First, ACLUM qualifies as a representative of the news media. Second, release of the records requested is in the public interest and not in any commercial interest of the requester. For these reasons, DHS has on numerous occasions agreed not to charge ACLUM and the ACLU fees associated with responding to FOIA requests.[18]

### 1. ACLUM is a representative of the news media as defined in the statute and regulations.

ACLUM is entitled to a fee waiver because it is a representative of the news media under both the FOIA statute and the Department of Justice regulations regarding FOIA fees. 5 U.S.C §551(a)(4)(A)(ii); 28 CFR 16.11(d)(1). ACLUM is a representative of the news media in that it is an organization "actively gathering news for an entity that is organized and operated to publish or broadcast news to the public,"

---

[10] See, *e.g.*, *The Future of Freedom: Action Report* ("2018 Annual Report"), aclum.org/sites/default/files/aclum_2018_annual_report_full.pdf.
[11] See 2018 Annual Report at 16.
[12] See On Liberty, aclum.org/en/on-liberty; Privacy SOS, privacysos.org.
[13] See facebook.com/aclumass/.
[14] See twitter.com/ACLU_Mass.
[15] See instagram.com/aclu_mass/; youtube.com/channel/UC14AFyqfizR4gMAMa8KlZ3A.
[16] See aclum.org/en/civil-liberties-minute.
[17] See generally, aclu.org.
[18] For example, on August 5, 2015, ICE granted ACLUM a public interest fee waiver for a request for documents about shackling in immigration court. ICE also granted the ACLU of Massachusetts a waiver of all search fees for a request submitted on Jan. 25, 2007. In June 2018, the U.S. Citizenship and Immigration Services waived fees for a request for documents relating to the use of social media surveillance. In August 2017, Customs and Border Protection (CBP) waived fees for a request for records relating to a muster sent by CBP in April 2017. In May 2017, CBP waived fees for a request for documents related to electronic device searches at the border.

Page 6
6/19/19 FOIA re DHS use of gang allegations

where "news" is defined as "information that is about current events or that would be of current interest to the public." 5 U.S.C. § 552(a)(4)(A)(ii)(II); 28 CFR § 16.11(b)(6).

ACLUM meets the statutory definition of a "representative of the news media" because it is "an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience." *Nat's Security Archive v. Dep't of Defense,* 880 F.2d 1381, 1387 (D.C. Cir 1989). *See also Electronic Privacy Information Ctr. v. Dep't of Defense,* 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003) (finding non-profit interest group that disseminated an electronic newsletter and published books was a "representative of the media" for purposes of FOIA.)

ACLUM is a non-profit, non-partisan civil rights and civil liberties organization with over 80,000 members and supporters across Massachusetts. ACLUM is the Massachusetts affiliate of the national ACLU, a non-profit, non-partisan organization with over 1.5 million members nationwide.

Gathering and disseminating current information to the public is a critical and substantial component of ACLUM's mission and work. As described above, ACLUM regularly publishes reports that rely on data and information obtained from public records requests.[19] In fact, ACLUM has a dedicated Data for Justice website which provides analysis of public records obtained by ACLUM.[20] As previously described, ACLUM's regular means of disseminating information also include: a website with approximately 150,000 visitors every year; various publications; an email newsletter to more than 100,000 subscribers; two blogs; social media accounts with more than 50,000 total followers; a podcast series; and educational events and regular public speaking engagements.[21] ACLUM's website, blogs, and other publications are widely available to the public at no cost.

These characteristics are typically sufficient to convey "representative of the news media" status on FOIA requesters. Courts have held that "[i]t is critical that the phrase 'representative of the new media' be broadly interpreted if the act is to work as expected … I[n] fact, any person or organization which regularly publishes or disseminates information to the public … should qualify for waivers as a 'representative of the news media.'" *Electronic Privacy Ctr. v. Dep't of Defense*, 241 F. Supp. 2d 5, 10 (D.D.C. 2003).

---

[19] See aclum.org/reports; see also, *supra*, n.7.
[20] See data.aclum.org.
[21] See, *supra*, nn.5-17; aclum.org.

### 2. The records sought are in the public interest and ACLUM has no commercial interest in the disclosure.

ACLUM is also entitled to a waiver or reduction of fees because "[d]isclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government," and such disclosure "is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 28 CFR § 16.11(k)(1)(i) and (ii).

This request aims at furthering public understanding of government policies and conduct that profoundly impact human lives. Through this request, ACLUM seeks to help the public understand how DHS receives and utilizes information from local and state police, particularly as it relates to allegations of gang membership. The President has made immigration issues a focus of his administration, and has repeatedly promised to deport noncitizens who are alleged gang members.[22] Recent press coverage has also demonstrated that the public is very interested in understanding how gang allegations by school officials and police officers are obtained and used by DHS, and how gang and other information about noncitizens is shared with DHS by local officials.[23]

ACLUM is a non-profit whose sole purpose is to protect civil rights and liberties for all persons in Massachusetts. It has no commercial interest in the information.

## Conclusion

If our request is denied in whole or part, we ask that you justify all deletions by reference to specific exemptions of the FOIA. We expect you to release all segregable

---

[22] See twitter.com/realdonaldtrump/status/1099995611305254912 (Feb. 25, 2019) ("Drugs, Gangs and Human Trafficking must be stopped!"); twitter.com/realdonaldtrump/status/1014098721460686849 (July 3, 2018) (promising to send ICE to get gangs out of the country); twitter.com/realdonaldtrump/status/854268119774367745 (April 18, 2017) ("We are removing [gangs] fast!").

[23] Shannon Dooling, *City Officials File Stronger 'Trust Act' After Concerns Over Boston Police Cooperation With ICE*, WBUR (June 13, 2019), wbur.org/news/2019/06/13/boston-revised-trust-act; Shannon Dooling, *Boston Police Confirm Officer's Involvement In ICE Arrest. ACLU Wants More Info*, WBUR (March 7, 2019), wbur.org/news/2019/03/07/boston-police-ice-task-force; Hannah Dreier, How a crackdown on MS-13 caught up innocent high school students, NY Times Magazine (Dec. 27, 2018), nytimes.com/2018/12/27/magazine/ms13-deportation-ice.html; Phillip Martin*, On Nantucket, Alleged Gang Member Moves On, But Is Not Free*, WGBH (Dec. 18, 2018), wgbh.org/news/local-news/2018/12/18/alleged-gang-member-on-nantucket-moves-on-but-is-not-free; Shannon Dooling, *What A Boston Student's Deportation Reveals About School Police And Gang Intelligence*, WBUR (Dec. 13, 2018), wbur.org/news/2018/12/13/east-boston-student-discipline-to-deportation; Phillip Martin, *Civil Rights Groups Say Police In Schools Are Source Of False Gang Alerts. Not So Says Boston Police*, WGBH News (June 17, 2018), wgbh.org/news/news/2018/06/17/civil-rights-groups-say-police-in-schools-are-source-of-false-gang-alerts-not-so-says-boston-police; Shannon Dooling, *A Minor Fight In A Boston School Landed One Student In ICE Custody, Advocates Fear*, WBUR (Jan. 26, 2018), wbur.org/news/2018/01/26/boston-student-ice-custody.

Page 8
6/19/19 FOIA re DHS use of gang allegations

portions of otherwise exempt material. We reserve the right to appeal a decision to withhold any information or to deny a waiver of fees.

We look forward to your reply to the Request within twenty (20) business days, as required under 5 U.S.C. § 552(a)(6)(A)(i).

Thank you for your prompt attention to this matter.

Sincerely,

Adriana Lafaille