**ICE'S SUMMARY OF AUGUST 7, 2020, CONFERENCE BETWEEN THE PARTIES**

ICE counsel, Alexandra Ellis, explained the ICE FOIA search processes and how ICE tasks searches through the various program offices.  Basically, the program offices receive search taskings from the ICE FOIA Office and disseminate the search taskings to the specific offices/units/individuals most likely to have responsive records.  After the searches are completed, the potentially responsive records are forwarded to the ICE FOIA Office.  The records are deduplicated and then loaded into ICE FOIA's case tracking software in production batches.  Each batch is approximately 500 pages, which corresponds to the number of pages that ICE FOIA will process each month until it processes all the records that are potentially responsive to the FOIA request(s).  Before a production is released, there are a series of reviews of the potentially responsive records by the ICE FOIA Office, the Government Information Law Division, in some cases by the program office and then ICE leadership.

Plaintiffs' wish to receive the ICE records as quickly as possible is understood.  ICE offered to accelerate productions by processing 750 pages a month.  ICE recommended that Plaintiffs consider modifying their record request to reflect only "final" WSO records rather than records in draft form.  Based on their August 10 e-mail, Plaintiffs are amenable to ICE processing 750 pages a month and also receiving only the final WSO records rather than those in draft form.  ICE will re-batch the reviews to include 750 pages rather than 500 pages, and while it will be more time consuming for ICE to increase its processing, ICE hopes that Plaintiff will consider it a good faith effort, demonstrating ICE's willingness to work with Plaintiffs to accelerate the productions.

**The WSO Request (Paragraph 23 of the Complaint):**

o        ICE re-asserts that records responsive to Part 2 are publicly available on the ICE weblink (https://www.ice.gov/287g) and this website is frequently updated with new information.
o        There are approximately 4,900 pages that are potentially responsive to the WSO FOIA request that have not been processed and released to Plaintiffs.
o        For the July 31, 2020 production, ICE reviewed all the previously collected records in response to the WSO FOIA request and manually searched for "policy documents."  Given that "policy document" is a subjective term, ICE interpreted the term very broadly to be records that provided guidance with respect to the execution of the WSO Program.  To this end, ICE FOIA processed e-mails, power point training slides and records from the ICE policy Office that provide guidance on the WSO program.
o        As discussed during this conference, ICE does not track which pages of the collected potentially responsive records correspond to a given subpart of a FOIA request.  Furthermore, it is conceivable that a page could be responsive to more than one of the subparts of the FOIA request.  Typically, the entire FOIA request is tasked to the respective program offices to search for responsive records.  The searches are performed and the potentially responsive records are returned to ICE FOIA Office to process.  Therefore, ICE is not in a position to address which subparts of the WSO FOIA request have been processed and released to Plaintiffs and which remain outstanding.
o        As noted, ICE proposed that Plaintiffs agree to modify the WSO FOIA request to seek only final versions of records to eliminate the draft versions of records.  ICE would then deem all

draft records that are potentially responsive to the WSO FOIA request (not just pages that correspond to subparts 1 and 5 of the WSO FOIA request) as non-responsive.  Essentially, the draft pages would not be processed and released to Plaintiffs.   This modification will require ICE FOIA conduct a manual review of the records, so ICE does not/will not have a preliminary page count.  If Plaintiffs elect to proceed with modifying theirFOIA request to seek only the final versions of records, ICE will conduct a manual review of approx. 4,900 pages to narrow the universe of potentially responsive records.  ICE FOIA offered that if Plaintiffs agree to forego the August 2020 production, ICE FOIA will focus on the proposed manual review of the approx. 4,900 pages of records and process up to 1,000 pages (to the extent that there are 1000 pages of WSO records in final version) on or before 30 September.  ICE asked Plaintiffs to let ICE know ASAP or at least by August 19, 2020 if they are interested in pursuing this option so that ICE can plan accordingly.

**The Gang Profiling Request (Paragraph 16 of the Complaint**):

**1.       All Homeland Security Investigations (HSI) memoranda, documentation, and/or reports relating to an individual's verified or suspected gang affiliation, whether addressed to an "Alien File" or sent to any other agency or sub-agency, including the Immigration and Customs Enforcement's (ICE) Office of Chief Counsel (OCC), ICE Enforcement and Removal Operations (ERO), the Boston Immigration Court, U.S. Please do not redact the zip code, country of origin, year of birth, or basis for gang affiliation. This request is limited to memoranda, documentation or reports created or submitted by HSI in Massachusetts between September 1, 2015 and the date of the search.**

o       ICE has consulted with HSI and proposes releasing copies of the Gang Verification Memos concerning subjects in Massachusetts dated September 1, 2015 until the date of the search subject to applicable withholdings.  The gang verification memo is an HSI record that summarizes the subject's interactions with known gang members and other factors that support a finding that the subject is part of a gang.
o       ICE will verify whether the "gang memo" constitutes the "gang packets" used in immigration court.

**2.       All correspondence between HSI Special Agent Sean Connolly and DHS Office of Intelligence and Analysis, ICE's National Gang Unit, ICE OCC and/or ICE ERO. This request is limited to correspondence between May 1, 2017 and October 31, 2017, and between January 1, 2019 and the date of the search.**

o       ICE explained that this subpart of the Gang Profiling FOIA request is overly broad as it requests SA Connolly's e-mail correspondence with unnamed ICE trial attorneys at potentially 26 Office of Chief Counsel locations and unnamed ERO Officers at 48 ERO Offices.  ICE explained that it is not able to identify whether an individual is assigned to an Office of Chief Counsel or an ERO field office without manually looking up the individual's name to verify where he/she is assigned in ICE.  This manual search requirement for each e-mail correspondence is unduly burdensome.  Rather than attempt to collect e-mail correspondence based on the duty assignment of the individual corresponding with SA Connolly, ICE proposed

various search terms: "verification," "member," "affiliation," "MS-13," "18 St" to narrow the request for e-mail correspondence based on the substantive content of the e-mail communication. This will reduce the collection of e-mails that are not related to gang cases.

o        Plaintiff ACLU indicated this request could be geographically limited to SA Connolly's correspondence with individuals in the Massachusetts OCC and ERO offices.

o        ICE recommended reducing the proposed time frame from 26-months to 12-months and using no more than three search terms for subject matter content in the e-mail as opposed to searching for e-mails based on an office or unit affiliation

o        Plaintiff will confer internally about ICE's proposed search narrowing and respond to ICE


**3.        All correspondence between HSI Special Agent Sean Connolly and the Boston Police Department (BPD), Boston Regional Intelligence Center (BRIC), Chelsea Police Department, Everett Police Department, Nantucket Police Department, New Bedford Police Department, Pittsfield Police Department, Revere Police Department, the Massachusetts State Police, and/or any school district employees in Massachusetts between September 1, 2015 and the date of the search.**


o        ICE explained that this subpart of the Gang Profiling FOIA request is overly broad in that it requests SA Connolly's e-mail correspondence with various Massachusetts police departments as opposed to identified individuals.  This would require a manual search for each e-mail correspondence that would be unduly burdensome.

o        Plaintiff proposed that ICE search for e-mail domain names, such as (but not limited to) "*mass.gov", "*state.ma.us" and/or "*boston.gov" to effect the search; ICE will inquire on this matter and report back to Plaintiff

o        ICE recommends against searching for SA Connolly's e-mail with various police departments in Massachusetts and instead recommends searching his e-mail for subject matter content using search terms (based on the rationale ICE presented in response to subpart 2) and to avoid collecting an excessive number of pages that are non-responsive.

o        ICE further proposed that Plaintiff narrow the date range from something narrower than Sept 1, 2015 to present; ICE suggested a two-year time period to reduce the number of pages.

o        Plaintiff will consider ICE's proposed search narrowing and respond to ICE.


**4.        All documents mentioning East Boston High School (EBHS), Chief Eric Weston, Lt. Kenneth Badgett, Lt. James Giardina, Sgt. Gabriel Rosa and/or Officer Roy Ercolano, including communications with each of these individuals, between January 1, 2015 and the date of the search.**


o        ICE was unclear regarding which ICE program offices to task to search because the named individuals are <u>not</u> ICE employees and the request does not  specific who at ICE had communications with these individuals.

o        ICE agreed to task SA Sean Connolly, current members of HSI Boston gang unit, and current members of ERO Boston to search e-mail and records for the following terms: "EBHS", "Weston", "Badgett", "Gairdina", "Rosa", and "Ercolano."

5.      **All documents mentioning the BPD-ICE Task Force or Boston Police Sergeant Detective Gregory Gallagher, between January 1, 2015, and the date of the search.**

o       In response to this request, ICE notes that there is no BPD-ICE task force.  Boston Police Sergeant Detective Gregory Gallagher is not a member of HSI, and suggests that a request for Sgt. Gallagher's e-mail communications be directed to Boston Police Department.
o       Plaintiffs clarified that Sergeant Gallagher was the BPD's ICE liaison and also appears to have been a deputized ICE officer.
o       ICE agreed to look into whether it has records of Gallagher's status at ICE (e.g., deputization paperwork) and whether Gallagher has/had an ICE or DHS email account, and to report the results to Plaintiffs.
o       Plaintiff will confer internally to consider providing additional information regarding what it is seeking.

6.      **All communications with Boston Police Sergeant Detective Gregory Gallagher or another member of the BPD-ICE task force between May 1, 2017 and October 31, 2017, and between January 1, 2019 and the date of the search.**

o       In response to this request, ICE notes that there is no BPD-ICE task force.  Boston Police Sergeant Detective Gregory Gallagher is not a member of HSI.  ICE suggests that a request for Sgt Gallagher's e-mail communications be directed to Boston Police Department.
o       Plaintiff clarified that Sergeant Gallagher was the BPD's ICE liaison and also appears to have been a deputized ICE officer.
o       ICE agreed to investigate whether or not it has records of Gallagher's status at ICE (e.g., deputization paperwork) and whether Gallagher has/had an ICE or DHS email account, and to report the results to Plaintiff.
o       Plaintiff will discuss internally to provide additional information regarding what they are seeking.

7.      **All documents related to Operation Matador or any other enforcement operations targeting gang members or associates in Massachusetts.**

o       ICE explained this request is overly broad, and ICE cannot identify the records Plaintiff seeks.  Operation Matador is a New York operation, more specifically, a Long Island operation involving multiple federal and state law enforcement agencies.  Operation Matador is not a Massachusetts operation. Moreover, Plaintiff's request for "or any other enforcement operations have targeted gang members in Massachusetts" is unclear and, moreover, the request provides no date range.
o       Plaintiff proposed searching "matador" AND ("school" or "high school" or "HS" or "BPS" or "Boston" or "Massachusetts").
o       ICE will task HSI to search for ICE documents based on Plaintiff's proposed boolean search.
o       ICE will limit its search to Plaintiff's proposed Boolean search.

8.      **All documents reflecting DHS Office of Intelligence and Analysis' access to the BRIC's gang database and other databases containing information about the suspected gang affiliation of Massachusetts individuals.**

o       This request does not appear to be directed to ICE.  ICE does not have access to the BRIC gang database.

9.      **All memoranda of understanding or other agreements pertaining to the sharing of intelligence or information with state and local law enforcement in Massachusetts, including but not limited to agreements with the Commonwealth Fusion Center, the Massachusetts State Police, BRIC, and the Boston Police Department.**

o       This request is overly broad in that it provides no date range for agreements.
o       ICE proposed tasking HSI Boston and ERO Boston to search for MOUs pertaining to intelligence or information sharing with state and local law enforcement (Fusion Center, Massachusetts State Police, BRIC and BPD) in Massachusetts.
o       ICE recommended that Plaintiff provide a date range for the agreements and suggested a date range of the last two years, 2019-2020.
o       Plaintiff will consider ICE's proposed search narrowing and respond to ICE.

10.     **Policy directives, internal memos, or other guidance, whether formal or informal, related to the practices and procedures for screening individuals for possible gang involvement, including but not limited to (a) unaccompanied minors; (b) nationals of Mexico, El Salvador, Honduras, and/or Guatemala; (c) any other category of individual with cases pending before U.S. Citizenship and Immigration Services or the Executive Office of Immigration Review.**

o       ICE has already conducted a search for this request.  On July 1, 2020, ICE processed and produced relevant portions of the Criminal Gang Investigation Handbook dated Aug 13, 2018 and records identified by ICE Policy, subject to applicable withholding.

11.     **Any record documenting the number of DHS employees assigned to work at the Commonwealth Fusion Center, the name of the component agency that employs each employee (e.g. HSI, ERO, etc.), the employee's job title, and/or the employee's level or type of permission to access databases containing information about alleged gang association**.

o       ICE is a component of DHS, and this FOIA request does not appear to be directed at ICE.
o       HSI does not have any personnel assigned to work at the Fusion Center. ICE confirmed that ERO does not have personnel assigned to the Fusion Center.

12.     **Any record documenting the number of DHS employees assigned to work at the BRIC, the name of the component agency that employs each employee (e.g. HSI, ERO, etc.), the employee's job title, and/or the employee's level of permission to access the Gang Assessment Database and any other databases containing information about alleged gang association.**

o        ICE is a component of DHS, and this FOIA request does not appear to be directed at ICE.
o        HSI does not have any personnel assigned to work at the BRIC.  ICE confirmed that ERO does not have personnel assigned to the BRIC.


13.     **Any record of the databases maintained by Massachusetts state or local entities that are searchable or accessible by representatives of the Department of Homeland Security.**

o        This request is overly broad such that ICE could not identify the records Plaintiff seeks. This request appears to ask a question rather than to request ICE records.
O        ICE informed Plaintiff that HSI does not have access to any databases maintained by Massachusetts or local entities. ICE confirmed that ERO does not have access to databases maintained by Massachusetts state or local entities.
o        Plaintiff clarified that it is seeking user agreements, requests for access and statistics on the number of queries that ICE makes to databases such as CJIS and RMV.
o        ICE will inquire whether ERO and HSI have user agreements, requests for access and statistics on use concerning CJIS and RMV.


14.     **Any document describing HSI or other DHS procedures pertaining to the verification of information originating from state and local law enforcement, including field interaction/observation/encounter (FOIE) or similar reports and gang designation determinations.**

o        In response to this request, HSI identified portions of the National Gang Investigation Handbook dated Aug 13, 2018 that are responsive to this request, which were processed and released to Plaintiff on July 1, 2020, subject to applicable withholdings.
o        Plaintiff explained that it is concerned about people being designated as gang members through unreliable means and gave the example of a point system.
o        ICE will look into whether HSI relies upon any guidance other than the National Gang Investigation Handbook to assess whether an individual is a member of a gang.