# Exhibit A

## Re: ACLU v. ICE: Meet and confer

Lauren Godles Milgroom <lauren@blockleviton.com>
Mon 8/10/2020 11:21 AM
To: Johnson, Anita (USAMA) <Anita.Johnson@usdoj.gov>
Cc: Daniel McFadden <DmcFadden@aclum.org>; Oren Nimni <onimni@lawyersforcivilrights.org>; Joel Fleming <joel@blockleviton.com>

Dear Anita,

Thank you very much for taking the time to go through the FOIA Requests with us on Friday. It was helpful for us to get a better understanding of what the government is asking for each request and get a sense of where the search and collection process stands. Please extend our appreciation to Alexandra as well, for making herself available last week.

I'd like to memorialize our conversation and follow-up items.  Please see below.

WSO Request:

- ICE reported that the search for records is complete.
- ICE reported that production of records responsive to Part 2 is complete, and the responsive records are now posted on ICE's website.
- ICE reported that it has made a partial production of records responsive to Parts 1 & 5, with a focus on policy documents.
- We understand ICE has not yet produced records responsive to Parts 3 & 4.
- ICE reported that approximately 4,000 potentially responsive pages have not yet been processed or produced.
- ICE stated that a large proportion of records potentially responsive to Parts 1 & 5 are draft legal memoranda, which ICE believes are FOIA exempt.  ICE proposed to narrow Parts 1 & 5 to exclude draft legal memoranda.  ICE believes such drafts comprise a substantial fraction of the records not yet processed.  After the call, Plaintiffs conferred internally, and Plaintiffs now agree that Parts 1 & 5 are narrowed to exclude draft legal memoranda.  Parts 1 & 5 still seek the final versions of any responsive legal memoranda.  Can you provide an updated page count in light of this modification?

Gang Profiling Request

1. **Gang Verification Memos**:
    a. ICE agreed to inquire internally about whether the gang memoranda it proposes to produce are the "gang packets" used in immigration court, and will report the results of its inquiry.
    b. ICE agreed to tell Plaintiffs approximately how many responsive documents/pages there are.
2. **Connelly Records (Parts 2 and 3)**
    a. ICE proposed search terms including "verification," "member," "affiliation," "MS-13," and/or "18th Street Gang".
    b. ICE proposed narrowing this request to Massachusetts using search terms.
    c. ICE agreed to inquire internally to see whether it is possible to search by email domain name, such as (but not limited to) "*mass.gov", "*state.ma.us," and/or "*boston.gov,"  and will report the results of its inquiry.
    d. ICE proposed that plaintiffs consider a further date restriction.
    e. Plaintiffs will confer internally on search terms and date restrictions and get back to Defendants.
3. *See above*
4. **East Boston High School documents**
    a. ICE agreed to search Sean Connelly, HSI gang unit members, and ERO Boston custodians.

5. **BPD/ICE Cooperation (Parts 5 and 6)**

   a. ICE stated that there is no BPD-ICE task force.  Plaintiffs clarified that Sergeant Gallagher was the BPD's ICE liaison and also appears to have been a deputized ICE officer.
   b. Plaintiffs will provide ICE with supplemental information explaining what Sergeant Gallagher was doing and which people/units he appears to have been communicating with at ICE.
   c. ICE agreed to investigate if it has records of Gallagher's status at ICE (e.g., deputization paperwork) and whether he had an ICE or DHS email account, and to report the results to Plaintiffs.
6. *See above*
7. **Operation Matador**
   a. Plaintiffs proposed search terms **"Matador" AND ("school" or "HS" or "BPS" or "Boston" or "Massachusetts").**
8. ICE stated any records would reside with DHS.
9. **Sharing Intelligence with MA**
   a. ICE proposed a date range of last 2 years.
   b. Plaintiffs agreed to discuss internally and get back to Defendants.
10. **Policy Documents**
    a. ICE represented that all responsive records for this request have been produced.
11. **Commonwealth Fusion Center**
    a. ICE stated that it has no personnel assigned to Fusion Center, and therefore represented that it has no responsive records.
12. **BRIC**
    a. ICE stated that it has no personnel assigned to BRIC, and therefore represented that it has no responsive records.
13. **Gang Databases**
    a. ICE counsel agreed to inquire again internally as to access to these databases.
    b. Plaintiffs name CJIS and RMV as potential examples, and note that responsive records might include user agreements, requests for access, and statistics on amounts of access.
    c. ICE will check on the volume of responsive documents
        i. If number of requests for access are too voluminous, Plaintiffs will consider how to narrow.
14. **Gang Designation Determinations**
    a. Plaintiffs explained they are concerned about people being designated as gang members through unreliable means, including, for example, point systems relying on arbitrary or unreliable criteria.
    b. ICE will confer internally and report back to Plaintiffs what might exist.
    c. ICE suggested National Gang Investigation Handbook already produced would be responsive, although not exhaustive.

In terms of the order of next steps, Plaintiffs explained at the end of the call that they believe the WSO records should be processed out first, given that the records are already collected and the volume is comparatively small. Plaintiffs also expressed a desire that the parties continue to negotiate the process for resolving the Gang Profiling Request.

ICE also offered to accelerate the pace of review to 750 pages per month. Plaintiffs explained that they welcome any acceleration of the production, but do not necessarily agree that this pace is sufficient to timely resolve the Requests..

Please let me know if I've missed anything. Thank you very much.

Best,
Lauren



--
Lauren Godles Milgroom
**Block & Leviton LLP**
(617) 398-5600