**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS and LAWYERS FOR CIVIL RIGHTS, <br><br> Plaintiffs, <br><br> -v- <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY and IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br> Defendants. | Civil Action No. 19-cv-12564 MBB |

**DECLARATION OF ICE DEPUTY FOIA OFFICER TONI FUENTES REGARDING
ICE FOIA OFFICE WORKLOAD AND RESOURCES**

**I.  INTRODUCTION**

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Acting FOIA Officer of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office. I have held this position since July 10, 2019 and am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C. § 552 (the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access statutes and regulations. Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013 to July 9, 2019, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS").

2.      My official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office, which is responsible for the receipt, processing, and response to all FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE.  In that capacity, I manage and supervise a staff of ICE FOIA Paralegal Specialists, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE, as well as the status, processing, and productions of ICE's federal FOIA litigations.  In connection with my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of FOIA and the PA.  In addition to responding to requests for information, I am also familiar with ICE FOIA's workload as well as the supporting metrics.

3.      I make this declaration in my official capacity based on my personal knowledge, my review of records kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

**II.       CURRENT STATISITCS REGARDING FOIAS SUBMITTED TO ICE**

4.      As of August 6, 2020, the ICE FOIA Office is processing approximately 62,845 requests, of which 4,555 requests are original requests submitted to the ICE FOIA Office, 144 are consults, and 58,290 requests are a referral backlog from the U.S. Citizenship and Immigration Services ("USCIS").[1]

5.      Beginning in fiscal year ("FY") 2018, the ICE FOIA Office experienced a substantial and dramatic increase in the number of FOIA requests received by ICE compared

---

[1] Other Federal agencies may send FOIA requests to ICE for either consultation and/or referral.  These consultations and referrals require a significant amount of work by ICE FOIA, as they must be treated like a normal FOIA request and require either a response back to the originating agency or a direct response to the requester.

to previous years. In FY 2015, the ICE FOIA Office received 44,748 FOIA requests; 63,385 FOIA requests in FY 2016; the number of requests received decreased in FY 2017 to 47,893 but was then followed by a record high of 70,267 FOIA requests in FY 2018. In FY 2019, that number increased even further to a total of 123,370 requests received. To date, in FY 2020, the ICE FOIA Office has received 114,475 requests.

6. In short, between FY 2017 and the first half of FY 2020, the ICE FOIA Office experienced approximately a 258% increase in FOIA requests. This dramatic increase in ICE FOIA's workload is attributed to the aforementioned increased number of referrals ICE receives from USCIS and the increased public interest in the Department's operations as they pertain to recent Presidential and/or Executive Orders and subsequent guidance from the Secretary of Homeland Security.

7. In addition to the increasing volume of FOIA requests, ICE has also experienced an increase in the complexity of FOIA requests, both in terms of volume and substance. For example, it is now not uncommon to see FOIA requests with 50 to 60 sub-parts comprising several pages, searches of numerous program offices, and a universe of records that has thousands of pages to review and process. These FOIA requests take considerably longer to process due to extensive searches that are usually required, and the intricacies of the documents and/or data produced. In FY 2019, one FOIA requester alone – a data clearing house – filed more than 370 FOIA requests seeking extensive data extracts. As of March 31, 2020, ICE FOIA had 295 similar FOIA requests from the same requester.

8. All these factors have nearly doubled the ICE FOIA Office's overall workload in comparison with the same date for FY 2017. In response to the increasingly heavy workload,

the ICE FOIA Office has adopted the court-sanctioned practice of generally handling backlogged requests on a "first-in, first-out basis," which ensures fairness to all FOIA requestors by not prioritizing one request over another.

9.  The ICE FOIA Office tracks all the requests it receives, both directly and by referral, through FOIAXpress, which is ICE FOIA's case management system. If needed, before importing documents to FOIAXpress, the ICE FOIA Office will use a separate program called Relativity, an eDiscovery platform, to initially process documents for productions. This software allows ICE FOIA to remove duplicate documents and group email threads, reducing overall page counts and thus facilitating faster and more efficient document production. Relativity can also facilitate narrowed searches within document sets, which is a function that FOIAXpress lacks. However, FOIAXpress and Relativity are not interoperable systems, and documents cannot be transferred or shared between the systems in a convenient fashion.

### III.     ICE FOIA OFFICE'S STAFF LEVELS AND WORKLOAD

10. A consequence of the increasing complexity and volume of ICE FOIA's workload (see paragraphs 4-8) is that more of those FOIA requests become subject to litigation in U.S. District Court.

11. The ICE FOIA Litigation Processing Unit is currently comprised of three full-time, experienced paralegals, one new full-time paralegal, and one part-time paralegal who are processing 154 active FOIA litigations as of August 17, 2020. There are currently 55 FOIA litigation cases that have rolling productions, which yield a monthly litigation production page count of between 25,000-28,000 pages. Additionally, there are cases that are added each month which increase the case list and resulting productions. With the monthly additions, the

four full-time and one part-time paralegals will be required to process nearly 40,000 pages per month. These page-count numbers do not take into account the more than 50 additional FOIA lawsuits that require a single production (instead of a rolling production schedule).

12. The ICE FOIA Litigation Processing Unit also drafts, assigns, and tracks any and all searches for responsive documents in response to FOIA litigations. These search taskings can span dozens of ICE program and field offices and require the Unit to keep track of hundreds of thousands of responsive documents, as well as each of the office's search documentation.

13. The four full-time and one part-time paralegals who comprise the ICE FOIA Litigation Processing Unit also have other duties, in addition to processing documents pursuant to litigation. For example, these four individuals also prepare various reports, process Congressional inquiries, redact Prison Rape Elimination Act ("PREA") and Office of Detention Oversight ("ODO") reports, send out FOIA (b)(4) submitter notices on relevant cases, and handle consults and referrals from other agencies as they come in. The Unit also supports attorneys in the ICE Office of the Principal Legal Advisor on federal FOIA litigations, assisting in the creation of *Vaughn* indexes, declarations, and other necessary filings.

14. The members of the ICE FOIA Litigation Processing Unit also manage a host of other administrative duties, including (but not limited to) monitoring the ICE FOIA inbox (which receives from 12,000-18,000 emails annually), processing all classified consults and referrals, scheduling productions, preparing clearance emails, and preparing other correspondence to requesters.

15. In total, each member of the ICE FOIA Litigation Processing Unit can process on average 100-300 pages per day, depending on the complexity of the documents, and still be required to keep up with their overall job requirements.

16. Outside of the Litigation Processing Unit, the ICE FOIA Office currently has a staff of 19 FOIA specialists dedicated to processing FOIA requests solely at the administrative level. The processors are responsible for responding to the original FOIA requests and, if necessary, reprocessing remands on appeal. In FY 2019, these FOIA processors completed and closed out 65,213 FOIA requests. Unfortunately, at this time, ICE FOIA does not have authority to hire any additional FOIA processor employees; indeed, as mentioned above, ICE FOIA employees have been lost due to budget cuts.

17. In order to meet its obligations for all cases in litigation, and to ensure that all of the FOIA matters progress so that each requester can receive a response, the ICE FOIA Office typically cannot process more than 500 pages per month for each case. Any increase in one matter would hinder ICE FOIA's ability to process records for productions in other matters.

18. Moreover, the ICE FOIA Office typically cannot *produce* a set number of pages per month. Depending on the volume of records located in the search tasking phase of the administrative stage and/or FOIA litigation, if the Court would order ICE FOIA to *produce* a certain number of pages per month, it is entirely plausible that the processors would have to review hundreds, or even thousands, of additional pages on top of the 500 pages that are attainable, in order to get to the requisite production number. ICE FOIA is incapable of achieving this outcome based on the limited resources available and the competing priorities, litigation and non-litigation deadlines, and the sheer volume of overall work.

Declaration of FOIA Officer Fernando Pineiro

**IV.     LIMITATIONS ON EXPEDITED REVIEW OF RECORDS OF PRIORITIZED RECORDS**

19. As detailed in paragraph 7 above, the complexity of FOIA requests submitted to ICE FOIA has greatly increased, resulting in requests that include multiple parts and subparts, which in turn leads to a large volume of potentially responsive records that require review and processing.

20. Not only do these complex FOIA requests require a more extensive search to be performed by the appropriate program offices, but they also require a comprehensive review process once search results are returned.

21. Conducting searches and processing potentially responsive records in response to a FOIA request is a multifaceted procedure.

22. When the ICE FOIA Office receives a proper FOIA request, its first step is to determine which program offices within ICE are reasonably likely to possess records responsive to that request, if any, and to initiate searches within those program offices. This determination is based on the description of the records requested and requires a familiarity with the holdings of ICE's records systems, and the substantive and functional mandates of numerous ICE offices. Factors such as the nature, scope, and complexity of the request itself are also relevant.

23. Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs in each of those program offices with a copy of the FOIA request and instructs them to conduct a search for responsive records. The POCs then review the FOIA request, along with any case-specific instructions provided by the ICE FOIA Office, and based

on their experience and knowledge of their program office's practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any.

24. Per the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of the file systems (including both paper and electronic files) that in their judgment, based on their knowledge of the manner in which they routinely keep records, would be the most likely systems to contain responsive documents. After those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn provides the records to the ICE FOIA Office.

25. Individuals and/or component offices who perform the search for responsive records typically do not organize or categorize the potentially responsive records in accordance with the multiple parts or subparts of the FOIA request. Consequently, the ICE FOIA Office does not have the ability to readily determine the responsiveness of each record to the parts and subparts of the FOIA request without manually reviewing each record. To do so would be exceedingly burdensome and it is not required by the FOIA. Furthermore, it is likely that one record may be responsive to more than one part or subpart of a FOIA request and therefore any page count of responsive records corresponding to the parts or subparts of a FOIA request would be inaccurate. For these reasons, the ICE FOIA Office does not identify the number of records that are potentially responsive to each part or subpart of the FOIA request.

26. Similarly, the ICE FOIA Office is not able to readily prioritize certain records over others for production release. To prioritize records for release, the ICE FOIA Office must either conduct a manual review of the entire universe of records and extract records that meet

Declaration of FOIA Officer Fernando Pineiro

8

the priority criteria, or stop production releases, load all the potentially responsive records into Relativity, perform searches based on specific agreed upon search terms, extract the priority records, reloaded the potentially responsive records into the FOIA case tracking program and then process the records. However, even if specific search terms are agreed upon between the parties, ICE FOIA would still have to review each page in order to determine if it is responsive to the request. Records containing a specific search term does not, in and of itself, deem a record responsive to the request.

27. ICE FOIA processes the potentially responsive records by conducting a line-by-line review of each page in order to determine the responsiveness of the record, as previously stated, as well as applying any appropriate FOIA exemptions. The length of time it takes ICE FOIA to complete the first line review of the records naturally depends on the number of pages they have to review and the complexity of the records.

28. Following ICE FOIA's review and application of any redactions to the records deemed to be responsive to the request, a second line review is conducted by ICE's agency counsel assigned to the specific FOIA litigation. This second line review also requires a line-by-line review of each page. In some instances, particularly for records that are law enforcement sensitive, the program office requires additional reviews prior to releasing the records.

29. Upon completion of the second line review by ICE's agency counsel and any additional program office reviews, the records are forwarded to a Senior Executive Service attorney to provide final clearance. Only after final clearance is obtained can ICE FOIA produce the records to the Plaintiffs.

30.     Once an initial production date or schedule is in place, either from an agreement between the parties or from a court order, the ICE FOIA Office endeavors to adhere to that production schedule/date.

## V. JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.  Signed this 18th day of August 2020.

*Fernando Pineiro Jr.*
_____
Fernando Pineiro, FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009