UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS and LAWYERS FOR CIVIL RIGHTS,<br><br>        Plaintiffs,<br>  v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY and UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)   CIVIL ACTION<br>)   NO. 19-12564<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF DECISION AND ORDER**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

December 19, 2023

DEIN, U.S.M.J.

**I. INTRODUCTION**

On December 23, 2019, the American Civil Liberties Union of Massachusetts ("ACLUM") and Lawyers for Civil Rights ("LCR") (collectively, the "Plaintiffs") brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the production of certain records from the United States Department of Homeland Security ("DHS") and United States Immigration and Customs Enforcement ("ICE") (collectively, the "Defendants"), in relation to two FOIA requests they had previously made. Over the next several years, the parties worked to resolve those requests, and the only issue remaining in this case is whether the Defendants have applied appropriate redactions to sections of one particular document they produced in response to one of those requests.

This matter is presently before the court on Defendants' "Motion for Summary Judgment" (Docket No. 100), by which the Defendants contend that portions of the document at issue relate to law enforcement techniques and guidance, and as such, have been properly redacted in accordance with 5 U.S.C. § 552(b)(7)(E) ("Exemption 7(E)"), one of the enumerated exemptions under FOIA.  This matter is also before the court on "Plaintiffs' Cross-Motion for Summary Judgment" (Docket No. 105).  By their motion, the Plaintiffs argue that these redactions have been improperly applied and that the Defendants should be compelled to produce the document in its unredacted form.

After consideration of the parties' written submissions, their oral arguments, and an *in camera* review of the redacted material at issue, the Defendants' "Motion for Summary Judgment" ("Defs'. Summ. J.") (Docket No. 100) is ALLOWED, and the "Plaintiffs' Cross-Motion for Summary Judgment" ("Pls'. Summ. J.") (Docket No. 105) is DENIED.  For reasons set forth more fully below, the court concludes that the Defendants have properly applied Exemption 7(E) with respect to each of the challenged redactions and have, as a matter of law, satisfied their burden under FOIA.

## II. STATEMENT OF FACTS

The following facts are undisputed unless otherwise indicated.[1]  Only information which is publicly available on the court docket is included herein.

---

[1] Unless otherwise indicated, the facts described herein are derived from: (1) the Plaintiffs' Complaint (Docket No. 1) and the exhibits attached thereto, which include, in relevant part, the June 21, 2019 FOIA Request ("Pls'. Ex. A") (Docket No. 1-3), the June 21, 2019 ICE Confirmation Letter ("Pls'. Ex. B") (Docket No. 1-4), the July 1, 2019 ICE Email Response ("Pls'. Ex. C") (Docket No. 1-5), the July 1, 2019 Appeal ("Pls'. Ex. D") (Docket No. 1-6), the August 9, 2019 ICE Appeal Response ("Pls'. Ex. E") (Docket No. 1-7), the October 16, 2019 FOIA Request ("Pls'. Ex. F") (Docket No. 1-8), the November 6, 2019 ICE Email Response ("Pls'. Ex. G") (Docket No. 1-9), and the November 7, 2019 Letter to ICE ("Pls'. Ex. H") (Docket No. 1-10);

**The June 21, 2019 and October 16, 2019 FOIA Requests**

The dispute in this case arises out of two FOIA requests which date back to June 21, 2019, and October 16, 2019.  On June 21, 2019, the Plaintiffs submitted a FOIA request (the "Gang Profile FOIA request") to ICE in the form of a letter, the subject line of which read, "FOIA request re DHS handling of allegations of gang membership," seeking, *inter alia*, agency records and information related to "how DHS obtains, evaluates, disseminates and uses allegations about an individual's gang membership."  (DSOF ¶ 2; PSOF ¶ 2; Pls'. Ex. A at CM/ECF Pages 1, 3 of 8; Pls'. Ex. F).[2, 3]  In a response issued by ICE on July 1, 2019, the agency determined that, among other things, the Plaintiffs' Gang Profile FOIA request was "too broad in scope."  (DSOF ¶ 3; PSOF ¶ 3; Pls'. Ex. C).  The Plaintiffs then appealed the agency's determination, and on August 9, 2019, ICE "remand[ed]" the request with respect to searches for one category of documents but "affirm[ed] the finding" that the remaining categories requested were too broad.  (DSOF ¶¶ 3-4; PSOF ¶¶ 3-4; Pls'. Exs. D, E at CM/ECF Pages 2-3 of 3).

---

from (2) the exhibits attached to the Defendants' "Memorandum in Support of Motion for Summary Judgment" (Docket No. 101), which include: Exhibit A, the Homeland Security Investigations Criminal Gangs Investigations Handbook ("Gang Handbook"), Exhibit B, the Declaration of Fernando Pineiro ("Pineiro Decl.") and the Vaughn Index attached thereto as Exhibit 1 ("Vaughn Index"); from (3) the Defendants' Local Rule 56.1 "Statement of Undisputed Facts" ("DSOF ¶ __") (Docket. No. 102); and from (4) "Plaintiffs' Local Rule 56.1 Statement of Undisputed Material Facts and Counterstatement to Defendants' Rule 56.1 Statement" ("PSOF ¶ __") (Docket No. 107).

[2] Citations to page numbers refer to the parties' own page numbering. Citations to CM/ECF page numbers refer to the court's numbering system located at the top right of the page.

[3] ICE is a law enforcement component of the Department of Homeland Security and its "investigative arm."  (Pineiro Decl. ¶ 27).  Homeland Security Investigations, a sub-component of ICE, is the component responsible for, among other things, the investigation of "immigration crime, human rights violations, and human smuggling" and "criminal street gangs."  (Id.).

On October 16, 2019, the Plaintiffs submitted a second FOIA request to ICE (the "WSO FOIA request") seeking agency records and information related to the ICE Warrant Service Officer ("WSO") program.  (DSOF ¶ 5; PSOF ¶ 5; Pls'. Ex. F).   In an email response on November 6, 2019, the agency determined that, among other things, the Plaintiffs' WSO FOIA request was "too broad in scope," and requested that the Plaintiffs resubmit a narrower request.  (Pls'. Ex. G).  The following day, on November 7, 2019, the Plaintiffs sent a letter to ICE, notifying the agency that it would "not resubmit the Request" and again requesting that the agency produce "all responsive records."  (Pls'. Ex. H at CM/ECF Pages 2-3 of 3).  On December 23, 2019, as a result of ICE's responses to their Gang Profile FOIA request and their WSO FOIA request, the Plaintiffs filed this action.  (DSOF ¶ 6; PSOF ¶ 6).

**The Defendants' Ongoing Efforts to Meet the Plaintiffs' Requests**

Following the filing of this action, the parties met and conferred on multiple occasions between October 2020 and February 2021, and in the months following, in an attempt to narrow and resolve the outstanding requests.  (DSOF ¶¶ 11-12; PSOF ¶¶ 11-12; Pineiro Decl. ¶¶ 12-13).  Between February 2021 and March 2022, the parties agreed to further-defined parameters for the Plaintiffs' Gang Profile FOIA request, and between November 2022 and March 2023, ICE lifted and reprocessed a portion of certain withholdings it had previously applied to various records, including the records in dispute.  (DSOF ¶ 15; PSOF ¶ 15; Pineiro Decl. ¶ 16). At present, the only issue remaining in this case is whether the Defendants have applied appropriate redactions to one particular document they produced, reprocessed, and then re-released in response to the Plaintiffs' Gang Profile FOIA request and the ongoing discussions.  (Id.).

**The Document at Issue**

At the heart of this dispute are select redactions spanning eight (8) pages of an agency document titled "Criminal Gangs Investigations Handbook" (the "Gang Handbook"), issued by Homeland Security Investigations ("HSI"), containing "internal agency guidance" for HSI Special Agents.  (Pineiro Decl. ¶ 25).  Specifically, the challenged redactions to the Gang Handbook can be found on Bates-stamped pages 59A, 60A, and 64A-69A, and they are described by the agency as covering "detailed definitions and the specific criteria that HSI considers when identifying gangs, criminal activity, and gang members."  (Pineiro Decl. ¶ 25; see Gang Handbook at 3-4, and A-i through A-vi).  In accordance with the Plaintiffs' Gang Profile FOIA request, ICE had initially reviewed and processed thirteen (13) pages of the Gang Handbook on July 1, 2020, but on January 23, 2023, following the parties' ongoing discussions with respect to withholdings, ICE reprocessed and re-released the Gang Handbook, lifting certain redactions but maintaining others.  (DSOF ¶¶ 16-18; PSOF ¶¶ 16-18; Pineiro Decl. ¶¶ 17-19).  The Plaintiffs maintain their challenge with respect to all redactions of the Gang Handbook which contain "ICE's 'definitions,' 'elements,' and 'criteria' for gangs and gang membership," found on Bates-stamped pages 59A, 60A, and 64A-69A.  (DSOF ¶ 18; PSOF ¶¶ 18-19, 21).

Additional factual details relevant to this court's analysis are set forth below where appropriate.

### III.  ANALYSIS

**A.  Summary Judgment Standard of Review**

Each party has moved for summary judgment with respect to the issue of whether the redactions in question have been appropriately applied under 5 U.S.C. § 552(b)(7)(E).  "The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)) (additional citation omitted).  The burden is upon the moving party to show, based upon the "materials in the record, including . . . affidavits or declarations," "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"  Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)) (additional citation omitted).  "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law."  Id. (quotations, punctuation, and citations omitted).

"FOIA cases are typically decided on motions for summary judgment."  Moradi v. Morgan, 527 F. Supp. 3d 144, 150 (D. Mass. 2021) (quoting Am. Civil Liberties Union of Mass., Inc. v. U.S. Immigr. & Customs Enf't, 448 F. Supp. 3d 27, 35 (D. Mass. 2020)) (additional citation omitted).  Summary judgment may be awarded to the government in a FOIA case if "the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester."  Am. Civil Liberties Union Found. of Mass. v. FBI, No. 14-cv-11759, 2016 WL

4411492, at *3 (D. Mass. Aug. 17, 2016) (quoting Fischer v. U.S. Dep't of Justice, 596 F. Supp. 2d 34, 42 (D.D.C. 2009)) (additional citation omitted).  Where, as here, "the requester files a cross-motion for summary judgment[,]" the agency's "burden does not shift[.]"  Am. Civil Liberties Union of Mass., Inc., 448 F. Supp. 3d at 36-37 (quoting Prop. of the People, Inc. v. Office of Mgmt. & Budget, 330 F. Supp. 3d 373, 380 (D.D.C. 2018)) (additional citation omitted).

Nevertheless, "[s]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Am. Civil Liberties Union Found. of Mass., 2016 WL 4411492, at *3 (quoting Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009)); see also Crooker v. Tax Div. of U.S. Dep't of Justice, Civ. A. No. 94-30129 MAP, 1995 WL 783236, at *10 (D. Mass. Nov. 17, 1995) ("Summary judgment in FOIA cases may be granted solely on the basis of agency affidavits.").

### B. 5 U.S.C. § 552(b)(7)(E) -- Exemption 7(E)

One of FOIA's nine statutory exemptions to its disclosure requirement, 5 U.S.C. § 552(b)(7)(E), permits a federal agency to withhold matters that are:

> (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]

The requirements of Exemption 7(E) are twofold, and the agency "bears the burden" of proving their existence.  Union Leader Corp. v. U.S. Dep't of Homeland Sec., 749 F.3d 45, 50 (1st Cir. 2014) ("the government agency bears the burden of proving the applicability of a specific

7

statutory exemption."); see 5 U.S.C. § 552(a)(4)(B). As an initial matter, "the agency must show that the records were compiled for a law enforcement purpose." Am. Civil Liberties Union of Mass., Inc. v. U.S. Immigr. & Customs Enf't, -- F. Supp. 3d --, No. 22-cv-10407-PBS, 2023 WL 5110418, at *4 (D. Mass. Aug. 9, 2023) (citing 5 U.S.C. § 552(b)(7)). Here, this first requirement is not in dispute.

Second, the agency must then "show that the records would either (1) 'disclose techniques and procedures for law enforcement investigations or prosecutions,' or (2) 'disclose guidelines for law enforcement investigations or prosecutions' and that 'such disclosure could reasonably be expected to risk circumvention of the law.'" Id. (quoting 5 U.S.C. § 552(b)(7)(E)).[4]

"Techniques and procedures" are those which "'would reveal particulars about the way in which an agency enforces the law and the circumstances that will prompt it to act.'" Id. (quoting Knight First Amend. Inst. at Columbia Univ. v. U.S. Citizenship & Immigr. Servs., 30 F.4th 318, 331 (2d Cir. 2022)). They have been "defined as 'how law enforcement officials go about investigating a crime[.]'" Am. Civil Liberties Union Found. of Mass., 2016 WL 4411492, at *4 (quoting Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec., 626 F.3d 678, 682 (2d Cir. 2010)). While investigative techniques and procedures "generally known to the public" fall outside the reach of Exemption 7(E), "if the means and 'circumstances' of the

---

[4] This court is cognizant of the fact that the First Circuit, as the Plaintiffs acknowledge in their brief, has not resolved whether an agency must also prove "risk of circumvention" with respect to "techniques and procedures." 5 U.S.C. § 552(b)(7)(E); (see Pls'. Summ. J. at 12 n.13). The Defendants acknowledge the same but address the risk of circumvention nevertheless. (See Pineiro Decl. ¶ 29; but see Defs'. Summ. J. at 6). Even if the clause were to apply to "techniques and procedures," the Defendants have also met this burden. See Broward Bulldog, Inc. v. U.S. Dep't of Justice, 939 F.3d 1164, 1194 (11th Cir. 2019) (acknowledging the circuit split on the issue and declining to "take a side" but finding in the matter before it that "[e]ven if [the] provision applies [to techniques and procedures]," the agency had met its burden) (alterations added).

techniques and procedures are not publicly known as well," such techniques and procedures "become protected" under the exemption. Am. Civil Liberties Union of Mass., Inc., 2023 WL 5110418, at *4 (additional citations omitted).

As for showing whether disclosure "could reasonably be expected to risk circumvention of the law," Exemption 7(E)'s parameters are straightforward. 5 U.S.C. § 552(b)(7)(E). The exemption looks "for the chance of a reasonably expected risk" of circumvention and covers information "that would *train* potential violators to evade the law" or information that, if disclosed, "could *increase the risks* that a law will be violated." Mayer Brown LLP v. I.R.S., 562 F.3d 1190, 1193 (D.C. Cir. 2009). Exemption 7(E) thus "sets a relatively low bar for the agency to justify withholding[.]" Blackwell v. F.B.I., 646 F.3d 37, 42 (D.C. Cir. 2011).

In FOIA cases, the withholding agency often prepares a Vaughn Index,[5] setting forth the information that the agency seeks to withhold and providing, for each withholding, the relevant FOIA exemption and an explanation of "the agency's justification for nondisclosure." Maynard v. C.I.A., 986 F.2d 547, 556 (1st Cir. 1993). A proper Vaughn Index "enable[s] the court and the opposing party to understand the withheld information in order to address the merits of the claimed exemptions." Abdul-Alim v. Wray, 277 F. Supp. 3d 199, 211 (D. Mass. 2017) (quoting Neuman v. United States, 70 F. Supp. 3d 416, 424 (D.D.C. 2014)) (alteration added). In addition to a Vaughn Index, a district court may also review the withheld information *in camera* in order to establish "an adequate factual basis" for its decision. Maynard, 986 F.2d at 558. Where, as here, "the documents withheld are brief and limited in number[,]" a court's decision to conduct an *in camera* review "is particularly appropriate." Id.

---

[5] Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

**C. The Challenged Redactions**

As detailed in their brief and in their statement of undisputed material facts in support of their motion, the Plaintiffs challenge the redactions applied to the sections of the Gang Handbook which pertain to ICE's "definitions, elements, and criteria for gangs and gang membership," which are found on pages 3-4 and in Appendix-i through Appendix-vi of the Gang Handbook, and which correspond to Bates-stamped pages 59A-60A, and 64A-69A. (DSOF ¶ 18; PSOF ¶¶ 19, 21) (additional quotations omitted). For each challenged redaction, ICE withholds the information under Exemption 7(E) and provides a detailed justification in support of its applied redactions in the form of the Declaration of ICE FOIA Officer Fernando Pineiro, and an accompanying Vaughn Index. (See generally Gang Handbook; Vaughn Index). In particular, the agency specifies that the redactions at issue cover pages of the Gang Handbook which relate to "procedures, techniques, and guidelines for conducting investigations pursuant to DHS' law enforcement authorities." (Pineiro Decl. ¶ 27).

The Plaintiffs, on the other hand, argue that the redactions amount to no more than "definitions" and that the Defendants "have failed to meet their burden" in showing that the withheld material constitutes "techniques and procedures" or "guidelines" under Exemption 7(E). (Pls'. Summ. J. at 7). This Court disagrees, and for the reasons detailed below, it finds that Exemption 7(E) has been properly applied with respect to each of the following challenged redactions.

"3.3 ICE Gang Membership Identification Criteria" (Pages 59A-60A)

The Defendants explain that the challenged redactions in Section 3.3 cover "eleven (11) specific factors" which HSI federal agents use as an "analytical tool" in certain scenarios to

10

evaluate and determine "whether an individual is a gang member," and that the list of factors "lays the foundation for and is therefore inextricably linked to the more robust analysis of gang member identification criteria detailed in Appendix A Section II" of the Handbook.  (Vaughn Index at 2; see Pineiro Decl. ¶¶ 25, 30-31, 35).  Upon review, this court finds that the Identification Criteria at Section 3.3 are specific factors used by federal agents in the course of their investigations that, viewed in context, amount to techniques and procedures used by law enforcement in determining potential gang membership.  By the document's own terms, Special Agents are instructed, in documenting their investigative reports, to apply the criteria in Section 3.3, and the information in Appendix A, in order to:

> A. Identify the gang membership criteria met by the individual (see Section II of Appendix A)
>
> **AND**
>
> B. Provide clear, concise, and articulable facts that substantiate the assignment of each gang membership criteria to the individual.

(Gang Handbook at 5).

Viewed with this proper context, the criteria reveal, and provide insight into, "how [HSI Special Agents] go about investigating" potential violations of the law.  Am. Civil Liberties Union Found. of Mass., 2016 WL 4411492, at *4 (citation omitted) (alteration added); see also Am. Civil Liberties Union of Me. Found. v. U.S. Citizenship & Immigr. Servs., 2:20-cv-00422-JAW, 2022 WL 1747863, at *17 (D. Me. May 31, 2022), report and recommendation adopted, 2:20-cv-00422-JAW, 2022 WL 4298419 (D. Me. Sept. 19, 2022) (concluding that withholding certain details including "factors," "factual patterns," and information related to "pre-screening

selection criteria" from an agency training document under Exemption 7(E) was proper and necessary to prevent future violations) (internal quotations omitted).

Because the criteria go beyond mere definitions in that they instruct federal agents not only what to look for but also provide a unique investigative framework for them to make determinations with, the Defendants have met their burden of showing that this first section of redacted text is appropriate under Exemption 7(E).

### "Definitions and Gang Membership Identification: I. Gang" (Pages 64A-67A)

The Defendants redact the first section of Appendix A's Section I. "Gang" under Exemption 7(E) on the basis that the redated text "describes factors that are indicative of a criminal gang" which HSI Special Agents, in turn, rely on in order "to assess whether a criminal organization constitutes a gang for purposes of investigation and prosecution." (Vaughn Index at 3). The Defendants redact the second section for the reason that it sets forth an "analytical tool used to evaluate a potential gang's criminal activity" which federal agents rely upon "to assess whether certain criminal activity signifies an organized criminal gang which warrants investigation and prosecution." (Vaughn Index at 4-5). The agency argues, for each of the redactions at issue, that while certain redacted information, characteristics, or factors "may be commonly acknowledged," it is how federal agents use this information and the manner in which they "apply these methods or factors" that subjects it to protection. (Vaughn Index at 2, 4-6; Pineiro Decl. ¶ 31).

Upon review, this court finds that each of the two unredacted sections of text within Section I. "Gang" contain "specific investigatory methods" intended to instruct federal agents on how to conduct their investigations into gangs and related criminal activity, and for that

12

reason, they amount to techniques and procedures.  Am. Civil Liberties Union Found. of Mass., 2016 WL 4411492, at *5 (rejecting an agency's application of Exemption 7(E) to "staffing and budget materials" but acknowledging cases where the agency in question properly withheld "manuals or handbooks that disclosed specific law enforcement procedures"); see also PHE, Inc. v. Dep't of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993) (sections of an agency investigative manual redacted pursuant to Exemption 7(E) were properly withheld where those sections detailed "the type of patterns of criminal activity to look for when investigating certain violations") (additional quotations omitted).  While HSI's investigative techniques and procedures may contain some information that is publicly known, the formulaic manner in which the agency has assembled them, the confidential "means" in which they are used, and the "'circumstances'" in which they are applied render them "protected" under the exemption. Am. Civil Liberties Union of Mass., Inc., 2023 WL 5110418, at *4 (additional citation omitted).

Here, the Defendants have met their burden of showing that the redactions within Section I. "Gang" are also appropriate under Exemption 7(E).

"Definitions and Gang Membership Identification: II. ICE Gang Membership Identification Criteria" (Pages 67A-69A)

Under Exemption 7(E), the Defendants apply redactions to the majority of Section II., which they describe as "a more robust analysis, supported by caselaw, of the eleven (11) factors from (Section 3.3[).]"  (Vaughn Index at 5).  These redacted sections expand on the preceding criteria set forth in Section 3.3, and they enhance Section 3.3's framework by adding curated explanations drawn from relevant case law intended to instruct federal agents in their investigative approach.  The Plaintiffs place particular emphasis on Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Immigr. & Customs Enf't, 571 F. Supp. 3d 237 (S.D.N.Y. 2021) to

13

support their contention that this information, and the information subject to the other redactions, should not be withheld.  However, Brennan is not applicable here.  The Brennan court also considered an HSI agency handbook, and it concluded that while some sections had been properly withheld under Exemption 7(E), other redactions which covered "simply a list of tools rather than specific instructions for how, when, and why to use such tools" had not.  Brennan, 571 F. Supp. 3d at 248.  Here, however, the challenged information goes beyond a simple list.

As evidenced by the unredacted paragraph immediately preceding the redactions in both Section 3.3 and Section II., the redacted information is part of the instructions issued to federal agents as to both when to use the tools and criteria, and how.  (See Gang Handbook at 3, A-iv) ("*If* an individual does not self-admit or have a gang-related conviction, the following criteria *should be used*, *with one of at least two criteria* . . .") (emphases added); see also PHE, Inc., 983 F.2d at 251 ("even a cursory review of the released material provides enough context to conclude that the [agency] fairly and accurately described the withheld material[.]") (alterations added).  This court's *in camera* inspection confirms that the redactions go beyond mere lists, and the Defendants have again carried their burden of showing that this final set of redactions are appropriate under Exemption 7(E).

Risk of Circumvention

In his declaration, ICE Officer Pineiro not only provides sufficient justification for application of Exemption 7(E) to each set of redactions but also adequately sets forth the risks in disclosure.  See Moradi, 527 F. Supp. 3d at 159-60 (finding agency affidavit sufficient to establish application of Exemption 7(E)).  Similarly, in the instant case, the declaration and the

accompanying Vaughn Index detail, at length and with specificity, the possible security risks inherent with release of the redacted information—namely, that individuals with knowledge of the disclosed techniques and procedures will use that information to manipulate their behavior in order to evade HSI's investigative efforts.  (See Pineiro Decl. ¶ 31); see also Abdul-Alim, 277 F. Supp. 3d at 215 (concluding that the withholding of redacted material under Exemption 7(E) was warranted where the agency declaration "provided sufficient details from which the Court" could find "a rational[ ] nexus between law enforcement methods/investigations and potential national security risks if the redacted information were disclosed").

Considering the redacted materials and the risks inherent in disclosure, this court finds that the proper nexus can be drawn.

In sum, upon review of the declaration of ICE FOIA Officer Fernando Pineiro and the accompanying Vaughn Index, and following an *in camera* review of the pertinent documents, this court has concluded that the redacted sections at issue amount to more than mere definitions or contextless criteria.  Here, the agency has met its "light" burden in providing "logical," sufficient justification for invoking Exemption 7(E).  Moradi, 527 F. Supp. 3d at 155 (internal quotations and citation omitted).  Taken together and in context, each of the redacted sections contain investigative resources and tools for HSI Special Agents that amount to "techniques and procedures" subject to Exemption 7(E)'s protection.[6]

---

[6] Because each of the challenged redactions are "techniques and procedures" under FOIA Exemption 7(E), this court need not reach the question as to whether the redactions in question also constitute "guidelines."  5 U.S.C. § 552(b)(7)(E); see also Bishop v. U.S. Dep't of Homeland Sec., 45 F. Supp. 3d 380, 387 (S.D.N.Y. 2014) (recognizing Exemption 7(E)'s "two alternative clauses") (additional citation omitted).

## IV. **CONCLUSION**

For all the reasons detailed herein, the Defendants' "Motion for Summary Judgment" (Docket No. 100) is ALLOWED, and the "Plaintiffs' Cross-Motion for Summary Judgment" (Docket No. 105) is DENIED.  This court concludes that the Defendants have properly applied Exemption 7(E) with respect to each of the challenged redactions and have properly discharged their burden under FOIA.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge
